In the early part of January, 1938, Mrs. Mabel Reid Brewer Knighton engaged the services of Q.Z. Clements for the management of a mercantile establishment owned by her and located at Dubberly, Webster Parish, Louisiana. Operations, pursuant to the arrangements, commenced on February 1, 1938, and terminated on or about February 6, 1939, when such owner sold the business to the commercial partnership of Phillip Holley Son. The provisions of the Bulk Sales Law of Louisiana, Act No. 270 of 1926, § 1 et seq., were not complied with in the consummation of the sale.
Clements, in this suit which he instituted against Mrs. Knighton, Phillip Holley Son, and the individual members of said partnership, seeks judgment in the amount of $292.37, being the balance of salary allegedly due him under a written agreement signed by Mrs. Knighton.
All defendants strenuously deny the validity of the salary claim and pray for a dismissal of the suit. In reconvention, Mrs. Knighton asks judgment against plaintiff for $858.88, this amount, she avers, being due to her by reason of the several transactions listed on a statement attached to her pleadings.
The district court rejected the demands of plaintiff and also those urged in reconvention by Mrs. Knighton.
After the lodging of the transcript in this court, pursuant to the appeal perfected by plaintiff, Mrs. Knighton filed an answer requesting an amendment of the judgment to the extent of allowing her reconventional demand.
Clements, according to the evidence, visited Mrs. Knighton in January, 1938, with the hope and purpose of securing the aforementioned position of manager of her Dubberly store. He presented at that time a written proposal, prepared under his direction and signed by him, reading as follows:
"Agreement From Q.Z. Clements To Mrs. W.B. Brewer:
"To take charge of her store at Dubberly, La., and to run it as near on a cash basis as possible.
"Mrs. W.B. Brewer is to stock the store to about $2,500.00 (merchandise) stock.
"I will be responsible for half of whatever I charge to someone. If at the end of one year there is any charges on the books or tickets that I have charged, I will stand one-half of the charges.
"I am to run the store for half of the profits and I am not to take over $50.00 per month from the business."
This offer was unsatisfactory to Mrs. Knighton for the reason that no provision was made for the payment of rent on the building. She refused to sign the instrument but kept it in her possession.
During the afternoon of that day Mrs. Knighton was advised by several friends, to whom the writing had been shown, to accept the proposal. Thereupon she wrote to plaintiff stating that she "would go ahead with him and not let a little thing like the rent interfere."
Three or four days later plaintiff again visited Mrs. Knighton and presented to her another instrument of writing, bearing upon the contemplated arrangements, the preparation of which he had directed. This proposal stated:
"Agreement from Mrs. W.B. Brewer of Minden, Louisiana, to Q.Z. Clements of Ida, Louisiana:
"I, Mrs. W.B. Brewer, am to stock my store at Dubberly, Louisiana, with $2,500.00 worth of merchandise and the said Q.Z. Clements is to run the store for $50.00 per month, and he is not to take anymore from the store than the said $50.00 per month as salary.
"I, the said Mrs. W.B. Brewer, am to pay all the taxes and insurance, light and gas bills, and I am to furnish my Ford car or a Truck for delivery purposes if the store makes a profit.
"I, the said Mrs. W.B. Brewer and the said Q.Z. Clements do hereby obligate ourselves to split the profit of the said business fifty-fifty, and we are to do business with the Peoples Bank and Trust Company of Minden, Louisiana.
"And I, the said Mrs. W.B. Brewer, do hereby authorize and give the (said) Q.Z. Clements permission to sign all contracts and checks, said checks or contracts to be *Page 141 
signed: Mrs. W.B. Brewer, by Q.Z. Clements.
"This contract being for one year from the date hereon."
After reading this second instrument, Mrs. Knighton signed it and delivered it to plaintiff. The latter did not affix his signature thereto.
This conference ended with Mrs. Knighton retaining the first instrument that bore the signature of plaintiff, but which was not signed by her, and with plaintiff keeping the second instrument that was signed only by Mrs. Knighton. Neither of the written proposals carried the signatures of both parties.
For a period of approximately one year and six days after February 1, 1938, the business was operated under the management of plaintiff. Following its sale to Phillip Holley Son he demanded of Mrs. Knighton, both amicably and through the medium of this suit, payment of the salary balance assertedly due him under their agreement. In this connection, he relies on the provisions of the above-quoted second instrument, contending that they were the last to be considered by the parties and constituted the consummated contract.
In resisting plaintiff's demands Mrs. Knighton shows that the first proposal, which did not specifically refer to the payment of a salary, evidenced the true agreement; and that she affixed her signature to the other or second writing, believing it to be a duplicate of the initial one and by reason of the false representations of plaintiff.
The allegedly fraudulent practice on the part of plaintiff is not substantiated by the record. It was encumbent on Mrs. Knighton to support her allegations of fraudulent practice with convincing proof (Louisiana Civil Code, Article 1848), but this she has not done. Moreover, it appears that she was able to, and did actually, read both of the instruments. Considering this reading, and as no fraud has been shown, she is chargeable with full knowledge and understanding of the contents of the writing which she signed, and her act cannot now be disavowed.
This litigation presents an unusual situation. No cases in the jurisprudence of this or any other state have been brought to our attention, and we have been unable to find any, involving a similar issue. Admittedly, the mercantile business was operated pursuant to a previously confected agreement between the parties; but there exists a divergence of views as to which of the two instruments evidences the true arrangement.
Our study of the evidence leaves us with the conviction that both writings were thought by the parties to be substantially identical. Their testimony is to this effect. Then too, both were dated January 13, 1938, presumably the date of the last conference at which the arrangements were decided upon, and one was retained by each party. Consequently, both instruments, we think, should be construed together, at least to the extent that the provisions of each do not exclude those of the other.
Pertinent to a consideration of the salary claim is the proposal of plaintiff, in the first writing, that "I am to run the store for half of the profits and I am not to take over $50.00 per month from the business"; while in the second act it is provided that plaintiff "is to run the store for $50.00 per month, and he is not to take any more from the store than the said $50.00 per month as salary", and that the profits of the business would be split fifty-fifty. These stipulations do not appear to exclude each other. On the contrary they may be construed together as granting to plaintiff, for his services, a salary of $50 per month, payable monthly, and additionally one-half of the profits of the business. A time for a division of profits is not fixed; presumably, they intended such to take place at the termination of the agreement. However, no profits were realized.
Also bearing upon the issue presented herein is the recital of the first instrument, to which plaintiff obligated himself, that "I will be responsible for half of whatever I charge to some one. If at the end of one year there is any charges on the books or tickets that I have charged, I will stand one-half of the charges." This provision is not contained in the second writing; but by reading together the two instruments it becomes a binding obligation.
At $50 per month, during the period of operations of one year and one week, plaintiff was entitled to a salary of $612.50. On this account he has been paid, as he testified, $332.65, leaving a salary claim of $279.85. From this there must be deducted $74.60, being one-half of the amount of the charges of $149.20 remaining on the books; *Page 142 
and the balance due and owing to plaintiff, for which he is entitled to judgment, is $205.25.
The claim urged in reconvention by Mrs. Knighton consists primarily of various charges made against plaintiff in the operation of the business. It is not clearly shown by the evidence, and the discussed writings did not provide, that he was legally obligated to pay these; hence the reconventional demand was properly rejected.
Accordingly, the judgment of the district court rejecting the demands of plaintiff is reversed and set aside, and there is now judgment in favor of plaintiff, Q.Z. Clements and against defendant, Mrs. Mabel Reid Brewer Knighton in the sum of $205.25, with 5 per cent per annum interest from judicial demand, and against Phillip Holley Son, Phillip Holley and A.A. Holley, decreeing them to be liable to plaintiff as receivers in accordance with the provisions of the Louisiana Bulk Sales Statute.
The judgment rejecting the reconventional demands of defendant, Mrs. Knighton, is affirmed.
Costs of both courts shall be paid by defendant, Mrs. Knighton.